UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILLIP F. POLLARINE | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL NO.  03 - |
| | : | |
| DAVID BOYER, Detective Sergeant | : | |
| | : | |
| and | : | |
| | : | JURY TRIAL DEMANDED |
| THE EAST NORRITON TOWNSHIP | : | |
| POLICE DEPARTMENT, | : | |
| Defendants | : | |

**COMPLAINT**

**I.     INTRODUCTION**

On November 16, 2002, the East Norriton Township Police Department, at the direction of Detective Sergeant David Boyer, invaded the home of Paul Pollarine, a disabled pharmacist, and without sufficient investigation, arrested him, used unlawful and unnecessary force which aggravated his back injuries, and subjected him to public humiliation in front of his neighbors.  Mr. Pollarine was released on bail by a District Justice.  Then on November 21, without probable cause, Detective Sergeant Boyer again invaded the home of Mr. Pollarine and illegally arrested him, again using excessive and unnecessary force further exacerbating his back injuries and then caused him to be falsely imprisoned at the Montgomery County Jail until November 26, 2002.  During that imprisonment Mr. Pollarine was unable to obtain the medicines or treatment prescribed by his doctors, and his physical health was damaged, in addition to the severe emotional distress he suffered during that false imprisonment.  He seeks to recover damages against the East Norriton

1

Township Police Department and Sergeant Boyer for the violations of his civil rights and for state law torts.

## II.     JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction pursuant to the provisions of 42 U.S.C. 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343, 29 U.S.C. §§ 626(c) and 794a and 42 U.S.C. §§ 2000e(5)(f) and 12117.

2.     Plaintiffs' federal claims are authorized by 28 U.S.C. §§ 2201 and 2202, 29 U.S.C. §§ 626(c) and 794a, and 42 U.S.C. §§ 2000e(5)(f), and 2117 as well as 42 U.S.C. § 1983.

3.     This Court has supplemental jurisdiction over Plaintiff's state law claims of false arrest and malicious prosecution under 28 U.S.C. § 1367 and 1441(c) and negligent supervision under 28 U.S.C. § 1367.

4.     Defendants' actions complained of took place within the jurisdiction of the United States Court for the Eastern District of Pennsylvania and Defendants may be found there.  Venue is therefore appropriate in this district pursuant to 28 U.S.C. § 1391(b).

5.     On May 16, 2003, Plaintiff duly gave notice to the Defendant Police Department of intent to commence the instant action pursuant to the provisions of 42 Pa.C.S.A. § 5522.

## III.    PARTIES

6.     The Plaintiff Phillip F. Pollarine (hereafter "Pollarine" or "Plaintiff") is a citizen of the United States who resides at 714 Woodland Avenue, East Norriton, Pennsylvania.

2

7.  Defendant David Boyer (hereafter "Boyer") was at all relevant times herein a Detective Sergeant employed by the East Norriton Township Police Department and subject to such Department's training, control and supervision.

8.  The Defendant Police Department of East Norriton Township, Pennsylvania, is a subdivision of East Norriton Township, a Municipal Corporation and governmental subdivision of the Commonwealth of Pennsylvania.

9.  At all times relevant herein, all acts performed by the individual Defendant and any other relevant police employed by the East Norriton Township Police Department were ministerial and were not acts incident to the sovereign functions of government. Such acts were done under color and pretense of the statutes, laws, ordinances, customs and usages of the Commonwealth of Pennsylvania and by the individual Defendants under the authority of his office as policeman for East Norriton Township.

10. Each and all of the acts alleged hereafter occurred in or about East Norriton Township, Pennsylvania and within the Eastern District of Pennsylvania.

**IV.   FACTS**

11. Pollarine is a licensed pharmacist who has been or is an adjunct professor of pharmacotherapy at the Colleges of Pharmacy at Case Western Reserve, Ohio Northern University, Toledo and Temple Universities and has practiced as a licensed, registered pharmacist at hospitals in Abington, Wynnewood and Roxborough and at Lankenau and Einstein Hospitals.

12. For a number of years, Pollarine has suffered from diabetes, severe lower lumbar back problems and inability to walk or move about, which resulted, among others, in major spinal surgery in November 1998 for a spondylolumbar lamenectomy. In that same month, Pollarine was certified as totally disabled by the Social Security Administration and placed on disability, which continues to this day.

13. In addition, Pollarine had a serious radiculopathy and secondary spinal injuries, which left him without any feeling below either knee.

14. As a result of this condition, Pollarine was unable to walk without a cane or to move readily or easily, circumstances that were visible and obvious to Defendants and known to them at all times throughout.

15. Pollarine presently resides and at the time of the incidents described herein, resided with his wife Barbara Pollarine (hereafter "Barbara") and his 17-year-old son.

16. Prior to November 2002, Pollarine and his wife had sought and received treatment for certain medical conditions of their minor son, who was and is suffering from obsessive compulsive disorder and an obstructive subset of Attention Deficit Deficiency. As a result of the same, their son has a history of severe behavioral disturbances, including violent episodes involving his father, sister, classmates and others during which he has lost control of himself.

17. On November 16, 2002, in the family home, the son refused direction from his father, used unacceptable language, and his father slapped him to stop the behavior.

18. At some point during this incident and unknown to his father, and while he was undergoing a severe episode of his disorders, the son telephoned

the Defendant East Norriton Township Police Department (hereafter "the Police") claiming child abuse.

19. As a result of such call, the Defendant David Boyer (hereafter "Boyer") and certain other unknown and unidentified officers employed by and acting for and on behalf of the Police appeared at the Pollarine residence at 714 Woodland Avenue, East Norriton, Pa.

20. The son granted Boyer and such other officers access. All such officers were then and thereafter acting at all times relevant as officers and agents of the East Norriton Police Department, which was responsible for their actions, training, supervision, direction and discipline.

21. Boyer and such other officers entered the Pollarine residence unannounced and without display of a warrant and without explaining their presence or purpose began to search for Pollarine.

22. At the time of their entrance Pollarine was in a second-floor bathroom and was unaware that such Defendants had entered the premises or were searching for him.

23. When Defendants found Pollarine in the bathroom, they demanded that he immediately exit and dress himself. Because he was both indisposed and crippled he could not immediately move, whereupon Defendants threatened him with pepper spray. Pollarine then struggled out of the bathroom partially undressed and with his cane struggled in his crippled condition to get to his clothes.

24. Defendants failed to inquire as to the father's side of the story or allow the father to explain his son's condition or his own disabilities.

5

25. When Pollarine turned his body to attempt to pull on his trousers, the four Defendant policemen, without further warning or cause, jumped upon him and wrestled him onto a bed and jumped, knelt, stood or sat upon his back.

26. Pollarine had not attempted to resist arrest and had not manifested any sign of physical resistance. Instead he had questioned the officers why they were attempting to arrest him.

27. When Pollarine raised questions, Boyer threatened Phillip with the use of pepper spray and with charges of resisting arrest and aggravated assault for questioning Boyer's presence or interrogation.

28. The Defendants' actions in grabbing Mr. Pollarine, throwing him down and physically restraining his movement caused him immediate and severe pain. As a result of the same, he was unable because of their actions and because of his inherent spinal problems to readily or easily walk or move about.

29. Pollarine attempted to advise the Defendants of his pain and discomfort and his ongoing spinal problems and asked them to look at his disability card, which had been issued following his surgery at Bryn Mawr Hospital and which he carried with him certifying and attesting to his disability. Boyer did not acknowledge such card and made no accommodation or response, but rather handcuffed Pollarine behind his back so he could not use his cane.

30. As a consequence of his inability to move easily or quickly, the Defendant then dragged and wrestled Pollarine down the stairs of his residence and into his front yard, at a time when Pollarine was in increasing pain and distress and was still only partially clothed.

31.     The Defendants then forced Pollarine to struggle on his feet across his yard and into the street with his pants down around his knees and to stand in his front yard in the rain for a prolonged period of time while they waited for a police van.  He remained in great pain and stood exposed in public sight of various neighbors and passersby.

32.     At no time from prior to their entry through the removal of Pollarine into his front yard did Pollarine offer physical resistance that would have justified the use of force or weapons. Rather, Plaintiff attempted to accommodate the Defendants and comply with their demands relying upon the evident authority of the individual Defendants who were throughout wearing the official uniforms, insignias and badges of the East Norriton Police Department.

33.     The Defendants then threw Pollarine into a police vehicle and drove him to Montgomery County District Court 38-1-1 for an appearance before District Justice Michael Richman (hereafter "District Justice Richman").

34.     All such acts by Defendants were performed in a violent and abusive manner with the intent and purpose of humiliating and embarrassing Plaintiff in the presence of the public generally and, particularly, in the presence of persons witnessing the incident.

35.     Boyer secured the preparation of a District Justice form of complaint charging Pollarine with simple assault and battery and resisting arrest. A copy of such complaint is attached as Exhibit "A."

36.     Following testimony from Boyer, District Justice Richman entered an order on November 16, 2002 releasing Pollarine and fixing unsecured bail at $5,000.00.  The District Justice orally advised Pollarine to stay at a local motel

or hotel for "several days" before returning to his home so that the dispute with his son could moderate and quiet with the brief passage of time. The District Justice set the matter down for a further hearing on November 25, 2002.

37. Pollarine followed the terms of this informal order and stayed at a local motel until his wife requested that he return on November 18, 2002.

38. Upon and after his return, there were no further disturbances within the family and the Pollarine family commenced to resume their normal life and pursuits.

39. During this time, an East Norriton patrol car was continuously and virtually always parked outside or near the Pollarine house and Pollarine himself was on various occasions followed by East Norriton patrol cars.

40. On November 21, 2002, Defendant Boyer and/or others of the Defendant officers or other agents unknown of the Defendant Police Department noted Pollarine's motor vehicle parked at his residence.

41. Boyer then telephoned Pollarine and told him either to leave his home immediately or face immediate arrest.

42. Without application for a warrant or seeking any other form of prior legal writ or authorization, they appeared at and entered his residence.

43. Boyer and other officers thereupon entered Pollarine's residence, grabbed and wrestled him, placing him in handcuffs with a belt around his back and through the cuffs and once more forced him to struggle and stagger in his disabled condition from his residence.

44. Pollarine urged the police officers to read and adhere to the provisions of District Justice Richman's Order of November 16, 2002, but they refused to look at a proffered copy of the Order or to acknowledge that Richman

8

had merely advised Pollarine to remain absent from his residence for "several days."

45   Boyer stated that the Police had observed Pollarine's automobile parked at his residence for the past several days and had thereupon concluded that Boyer himself was present in the residence in violation of some provision of Richman's Order of November 16, 2002. Pollarine had not in fact been present at his residence between November 16 and November 18, 2002 nor had his automobile been parked there.

46.   The Police then took Pollarine to appear before District Justice Ester Casillo (hereafter "District Justice Casillo") at Magisterial District Court 38-1-01 on November 21, 2002, and Boyer swore out an "Affidavit of Probable Cause" averring that Pollarine had violated the prior District Justice's Bail Order of November 16, 2002.

47.   Upon the basis of such affidavit, District Justice Casillo ordered Pollarine held in the Montgomery County Jail where he was held until November 26, 2002.

48.   During his incarceration, Pollarine advised the Police that he was suffering from diabetes, hypertension, and severe impairment of his lumbar spine and that he required continuous prescribed medications including Glucophage XR, Oxycontin and Paxil.

49.   The Montgomery County Jail refused to give Pollarine the same or to grant his access to outside sources for such medications. Instead they gave him certain other medications of a form and type unknown to Pollarine, which the jailors claimed were "equivalents."

50. As a consequence of being deprived of his proper and customary medications and of being unlawfully arrested and incarcerated, Pollarine was placed in extreme physical pain and discomfort and caused grave and severe physical and emotional stress which has resulted in post-traumatic stress syndrome for which he has and will continue to require psychotherapy and separate medication..

51. As a direct consequence of being deprived of his medications and being so held Pollarine suffered a severe relapse in his condition and slowly lost total control of his legs; was consequently bed ridden for over two months and was unable to work in any capacity in any employment.

52. Pollarine's physicians advised him that being so held and deprived had effectively cost him all of the benefits of a prolonged period of rehabilitation he had just completed and caused a major relapse in cure and treatment of his spinal condition requiring frequent and painful steroid injections; limiting him to being able to stand for no longer than 15 minutes at a time; and which will likely require spinal fusion surgery. None of these consequences would have occurred but for the succession of actions of the Defendants as set forth herein.

53. Prior to this time, Pollarine had never experienced comparable pain in his left hip or leg.

54. Pollarine was then brought back before District Justice Casillo by the Police for violation of the prior bail Order.

55. At the time of the November 26, 2002, appearance before District Justice Casillo, Boyer, when cross-examined, could not find any of the terms and conditions for which he had rearrested and incarcerated Pollarine within District Justice Richman's Order.

56.   District Justice Casillo recessed the hearing.

57.   District Justice Casillo then proposed that Pollarine plead guilty to disorderly conduct. Given that District Justice Casillo had just concluded that Pollarine had not and could not have violated non-existent terms of the November 16 bail order, Pollarine therefore understood that Casillo was proposing that he plead to disorderly conduct for the November 16, 2002 incident and was proposing that he pay a nominal $50.00 fine on account of his conduct on November 16.

58.   Pollarine therefore agreed to pay the $50.00 fine prescribed in the November 16 charge if he were immediately released.

59.   Pollarine was in fact promptly released and advised that when he received a copy of the Order being entered on November 26, 2003, he could pay the $50.00 fine by mail and be finally discharged.

60.   However, when Pollarine later received his initial copy of the charges (a copy of which is attached as Exhibit "B"), he found for the first time that the Police had filed a new charge of disorderly conduct dated November 21, 2002, issued as Citation No. P1621107-5, a copy of which is attached as Exhibit "C," charging Pollarine with "creating a disturbance, which served no legitimate purpose."

61.   Pollarine then followed the directions on the citation and returned a not guilty plea and requested a hearing date.

62.   When Pollarine inquired at the court why he had received no hearing date, the clerk informed him that he could not enter a not guilty plea and unless he paid the fine, a warrant would be issued for his arrest.

63.     When Pollarine and his counsel attempted to pay the agreed fine of $50.00 for the incident of November 16, 2002 the offices of the District Court could not produce any record of the charges to which the same would be applied.

64.     Pollarine paid the sum of $50.00 with the attached letter from counsel to avoid a further threatened warrant for his arrest and through the present date, has been unable to ascertain to what matter or file the same was applied. This letter of May 9, 2003 is attached as Exhibit "D."

65.     While Plaintiff denies and has continuously denied committing any crimes, he specifically denies that he committed any criminal act on November 21, 2002, upon which the charges set forth in Exhibit "C" would be based.

66.     Plaintiff therefore avers that even if he had committed any criminal act on November 21, 2002, Defendants were not justified in using the kind and degree of force they used to effect his arrest on that date and were unjustified in making any form of arrest after that date.

67.     Plaintiff further avers that he never breached any condition of bail at any time and committed no possible further criminal acts after November 16, 2002, and, that his subsequent arrest, detention and incarceration on November 21, 2002 was unlawful and without justification or basis in law or fact, and was therefore malicious and done for a purpose other than bringing him to justice.

68.     Plaintiff further avers that from and after November 16 he was in full and due compliance with the provisions of the District Court Order of November 16, 2002, and that the ensuing actions of the Defendants were

therefore unlawful and unreasonable; were without justification or basis in law or fact; and were done willfully and intentionally for a wrongful and improper purpose.

69. The Defendant East Norriton Township, acting through its Police Department, was responsible for the training, supervision, disciplining and control of Boyer and of any other police officers involved in the present matters and is therefore responsible for failure to have controlled or prevented their wrongful acts and all such acts as were without justification or reasonable basis in law and fact.

70. On information and belief, Plaintiff further avers that the East Norriton Township Police Department knew of other incidents involving Boyer, where Boyer had failed to respect the requirements of the Constitution, but that it had failed to discipline or correct him.

71. Such acts of Defendants deprived Plaintiff of his right to be secure in his person against unreasonable search and seizure (under the Fourth and Fourteenth Amendments to the United States Constitution); not to be arrested or detained without being fully and duly informed of charges against him (pursuant to the Sixth Fourteenth Amendments to the United States Constitution); not to be subjected to cruel and unusual punishment (under the Eighth Amendment to the United States Constitution); nor to be deprived of life, liberty or property without due process of law or be subjected to denied equal protection of law as guaranteed by the (Fourteenth Amendment to the United States Constitution) (the Fourth, Eighth and Fourteenth Amendments to the United States Constitution).

72.     The acts of the Defendants occurring on and after November 16, 2002, were performed knowingly, intentionally and maliciously and in the knowing and/or careless disregard of Plaintiff's rights, entitling Plaintiff to an award of appropriate punitive damages.

73.     By reason of such wrongful acts, Plaintiff was required to engage counsel to secure his release from custody on November 26, 2002 and has been forced and compelled to incur additional legal costs and expenses, which will continue hereafter.

74.     As further direct and proximate results of such wrongful acts of Defendants, Plaintiff was improperly and unlawfully arrested, detained and imprisoned and compelled to forgo his liberty for six days.

75.     Defendants' actions have further caused Plaintiff grave and severe physical, mental and emotional distress, have caused him to be ostracized by his neighbors and have caused serious damage to his reputation and standing in his community and will continue to cause the same hereafter.

76.     Defendants had sufficient basis and should have known from the outset that those incidents, which had in fact occurred at the Pollarine residence, were in the nature of a normal domestic disturbance brought about by the condition of Pollarine's son and were or should have been aware that the son was suffering from certain medical conditions likely to have caused disturbing and aberrant behavior.

## **CIVIL RIGHTS VIOLATION**

77.     Plaintiff incorporates by reference paragraph 1 through 76 hereof as though set forth in full.

78. At all times herein, the individual Defendant was acting under the color of state authority and as an employee of the East Norriton Police Department.

79. The aforesaid actions of the Defendants were in violation of 42 U.S.C. § 1983 and caused the Plaintiff to be deprived of rights, privileges and immunities secured by the United States and Pennsylvania Constitutions and other laws, including, but not limited to:

    (a) Invasion of privacy;

    (b) Assault and battery;

    (c) Use of excessive force;

    (d) False arrest;

    (e) Illegal detention;

    (f) Arrest without probable cause;

    (g) Arrest and detention without due process of law; and

    (h) False imprisonment.

    (i) Reckless disregard of his medical condition.

## **SUPERVISORY LIABILITY**

80. Plaintiff incorporates by reference paragraphs 1 through 79 as though set forth in full.

81. Plaintiff, upon information and belief, avers that the individual Defendant and one or more of other officers and agents of the East Norriton Police Department have engaged in similar behavior on prior occasions and that the Department had notice and knowledge of such incidents.

82. Employees of the Defendant Police Department who acted in or occupied supervisory authority or positions over the individual Defendant or other officers failed to adequately train, supervise, control, discipline or take proper remedial action to control and prevent such conduct and the acts that occurred herein.

83. It is further averred that such derelictions and failures constituted deliberate indifference to Plaintiff's rights and the rights of other citizens with whom Defendants might come in contact.

84. Such failures to control, train, discipline or supervise including, among others, the following:

    (a) failure to implement appropriate policies regarding service of warrants and arrest;

    (b) failure to implement appropriate policies regarding confrontation of unarmed citizens in their private homes;

    (c) failure to implement appropriate policies regarding unauthorized entrance into private homes;

    (d) failure to implement appropriate policies regarding reprimand, discipline or remediation of inappropriate or improper conduct;

    (e) failure to implement appropriate policies regarding the use of force against unarmed private citizens; and

    (f) failure to implement policies regarding treatment of individuals with disabilities and medical conditions requiring medication.

85. Supervisory personnel of the East Norriton Police Department had specific foreknowledge of the propensity or likelihood that the individual Defendant Boyer would or might engage in improper or unlawful conduct and acquiesced in such conduct by failing to establish and implement proper procedures and in failing to adequately train, control, discipline or supervise such Defendants.

86. Such failure constituted deliberate indifference to Plaintiff's rights and was directly and causally related to the deprivation of Plaintiff's constitutional rights as set forth herein.

## PENDENT STATE CLAIMS

### False Imprisonment

87. Plaintiff incorporates by reference paragraphs 1 through 86 as though set forth in full.

88. Defendants actions caused Plaintiff to be knowingly and intentionally held and restrained from November 21 through November 26, 2002 unlawfully and without just cause and caused a substantial interference with his liberty. The same therefore constituted the pendent tort of false imprisonment under relevant state law.

### False Arrest

89. Plaintiff incorporates by reference paragraphs 1 through 88 as though set forth in full.

90. Defendants' arrest and detention of Plaintiff on and after November 21, 2002 were done knowingly and intentionally without justification, purpose, reason or basis in law or fact and without any form of valid legal process.

91.     Defendants' actions in holding and detaining Plaintiff after November 21, 2002 were knowingly and intentionally done without either probable cause or any cause in law or fact.

92.     Defendants' actions in so holding and detaining Plaintiff were further done in the knowing and intentional absence of any evidence that Plaintiff had committed any crime or unlawful act justifying any form of arrest or detention. The same therefore constituted the pendent tort of false arrest under relevant state law.

### Malicious Prosecution

93.     Plaintiff incorporates by reference paragraphs 1 through 92 as though set forth in full.

94.     Defendants arrested and detained Plaintiff on and after November 21, 2002 without probable cause and without reason in law or fact and for a purpose other than bringing Plaintiff to justice.

95.     The only possible wrongful acts that Plaintiff had committed had been committed on November 16, 2002.

96.     The only criminal charges that could have been lawfully pending on November 26, 2002 were therefore matters relating to Plaintiff's conduct on or before November 16, 2002.

97.     As a consequence, the only criminal conduct that could lawfully have been before the District Court on November 26, 2002 was conduct relating to the transactions occurring on November 16, 2002.

98.     Prior to and at the time of the November 26, 2002 hearing, Pollarine had committed no discrete acts that could have formed the legal basis for any new or additional criminal charges beyond the scope of the matters

18

before the court on November 16, 2002. Therefore, the proceeding on November 26, 2002 could not have been adjudicated unfavorably to Pollarine.

99.  The Defendants' actions on and after November 21, 2002 were therefore done maliciously and intentionally and without purpose or cause in law and fact and constituted the pendent tort of malicious prosecution under state law.

### Assault and Battery

100.  Plaintiff incorporates by reference paragraphs 1 through 99 as though set forth in full.

101.  Defendants' use of force from November 16, 2002 through November 26, 2002 was excessive, unreasonable, unnecessary and unjustified.

102.  The Defendants' use of any form or degree of force and subjecting him to force during incarceration after November 16, 2002 was unreasonable, unnecessary and unjustified.

103.  Defendants' actions subjected Plaintiff to unjustified fear of serious bodily injury and in fact caused him severe physical injuries. The same therefore constituted the pendent tort of assault and battery under relevant state law.

WHEREFORE, Plaintiff prays for judgment in his favor and against the Defendants in an amount in excess of Seventy Five Thousand Dollars ($ 75,000.00).

Respectfully submitted:

October       , 2004

_____
Anna M. Durbin, Esq.
I.D. No. 30555
Counsel for Plaintiff